# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LEAD GHR ENTERPRISES, INC. | § | |
| formerly d/b/a GOLDEN HILLS | § | |
| RESORT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-mc-91-M-BN |
| | § | |
| AMERICAN STATES INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Non-Party Haag Engineering Co. ("Haag") has filed a Motion to Quash Deposition Subpoena [Dkt. No. 1] (the "Motion to Quash") under Federal Rule of Civil Procedure 45, seeking to quash or modify a subpoena (the "Subpoena") issued by Plaintiff Lead GHR Enterprises, Inc. ("Lead GHR") in connection with the case *Lead GHR Enterprises, Inc., formerly d/b/a Golden Hills Resort v. American States Insurance Company*, Civil Action No. 16-5026, pending in the United States District Court for the District of South Dakota, Western Division (the "South Dakota Lawsuit"). The Subpoena commands the deposition of a corporate representative of Haag under Federal Rule of Civil Procedure 30(b)(6). *See* Dkt. No. 1-1 at 12-17. Haag "requests the Court enter an order quashing Lead GHR's subpoena or, alternatively, modifying the subpoena to permit discovery of information relevant to the underlying dispute." Dkt. No. 1 at 1.

Chief Judge Barbara M. G. Lynn has referred the Motion to Quash to the undersigned United States magistrate judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 2.

Lead GHR filed a response, *see* Dkt. No. 5, and Haag filed a reply, *see* Dkt. No. 6.

## Background

The Subpoena was properly issued by the United States District Court for the District of South Dakota, Western Division under Federal Rule of Civil Procedure 45(a), as the court where the South Dakota Lawsuit is pending. *See* FED. R. CIV. P. 45(a)(2) ("Issuing Court. A subpoena must issue from the court where the action is pending.").

The Subpoena commands Haag "that pursuant to Rule 45 and Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Lead GHR Enterprises Inc., will take the deposition of Haag Engineering Co., upon oral examination before an officer authorized to administer oath on December 4, 2017 at 9:00 a.m. in the offices of STEVEN C. LAIRD, 1119 Pennsylvania Ave, Fort Worth, TX 76104, or at another time and place that is agreeable to all parties." Dkt. No. 1-1 at 12.

Because the Subpoena requires compliance in Fort Worth, Haag properly filed its Motion to Quash in this Court, which, as required by Rule 45(d)(3), is the court in the district where compliance with the Subpoena is required. *See* FED. R. CIV. P. 45(d)(3)(A); *accord CSS, Inc. v. Herrington*, No. 3:17-mc-71-N-BN, 2017 WL 4750707 (N.D. Tex. Oct. 20, 2017).

The Subpoena further advises that "[t]he topics upon which inquiry will be made are set forth in Exhibit A of this subpoena," which provides:

## DEFINITIONS:

1. As used herein, the tem'. "Lead GHR" refers to Plaintiff Lead GHR Enterprises, as well as its agents, employees, representatives, principals and managers. "Lead GHR" shall also refer to any parent, subsidiary, or related corporation.

2. As used herein the tem]. "Defendant" or "American States" shall mean Defendant American States Insurance Company, and any parent, subsidiary, or affiliate entity.

3. As used herein, the term "You" and "Your" shall mean Haag Engineering Co. (hereinafter "Haag").

4. As used herein, the term "Damage(s)" shall mean the damages claimed by Plaintiff as a result of the Event, as defined herein.

5. As used herein the term "Event" shall mean the wall collapse that occurred on October 10, 2010.

6. As used herein, the term "Retaining Wall" shall mean the collapsed wall that is the subject of this lawsuit.

7. As used herein, the term "Building" and/or "Hotel" shall mean the building formerly known as the Golden Hills Resort.

8. As used herein, the term "Document" includes all information in written, recorded, graphic, or electronic form, including writings, drawings, graphs, charts, photographs, tapes, recordings, e-mails, computer records, computer, computer diaries, motion picture or videotapes.

## DEPOSITION TOPICS

1. With respect to the Retaining Wall and Building:

   a. The Haag employee or employees who inspected the Retaining Wall and Building after the October 10, 2010 collapse;

   b. All information communicated to Haag about Lead GHR or the Retaining Wall and Building prior to the inspection done on October 29, 2010;

   c. All information communicated to Haag about Lead GHR or the Retaining Wall and Building after the inspection done on October 29, 2010;

   d. All information communicated by Haag about Lead GHR or the Retaining Wall and Building at any time.

2. With respect to the Event:

a. Any measurements, notes, memoranda, reports, drafts, emails, correspondence, calculations, photographs, videos, or graphs prepared or created by Haag employees in conjunction with the inspection done on October 29, 2010.

b. Any conclusions drawn by Haag employees about the Event, and the basis for each such conclusion.

3. Haag employees, David Teasdale and Tim Strasser.

a. Any continuing education required by Haag for David Teasdale and Tim Strasser.

b. Any information related to performance reviews or promotions/reprimands for David Teasdale and Tim Strasser from 2008 to 2012.

4. The documentation retention policies and practices of Haag.

5. Your relationship with Defendant and Liberty Mutual Insurance Company ("Liberty"), and its subsidiaries, in the State of South Dakota.

a. Number of claims in which Defendant or Liberty retained Haag in South Dakota since 2009.

b. The percentage of claims in South Dakota since 2009 in which, on behalf of Defendant or Liberty, Haag issued an engineering report.

c. Your knowledge or understanding of South Dakota state licensing requirements for Engineers.

6. Your professional relationship with Defendant and Liberty generally.

a. Any workshops, training materials, speeches, or advertising provided by you directly to Defendant or Liberty from 2008 to 2011.

b. Any solicitations or discounts offered by Haag to Defendant or Liberty from 2008 to 2012.

c. Any instances, since 2008, in which a moratorium was placed on Haag from performing engineering services on behalf of Defendant or Liberty, and the circumstances surrounding such moratorium.

d. Any instances, since 2008, in which Defendant or Liberty has alleged that Haag or its employees have committed fraud, negligence, or professional malpractice.

7. Your professional relationship with other insurance carriers, such as State Farm Insurance Company and All State Insurance Company.

a. Any instances, from 2005 to 2010, in which a moratorium was placed on Haag from performing engineering services on behalf of any insurance company, and the circumstances

b.     Any instances, from 2005 to 2010, in which any insurance company which has retained Haag's professional services has alleged that Haag or its employees have committed fraud, negligence, or professional malpractice.

surrounding such moratorium.

Dkt. No. 1-1 at 15-17. Lead GHR has since withdrawn Topics 3(b) and 4. *See* Dkt. No. 5 at 9-10.

Haag explains that its Motion to Quash "relates to Lead GHR's subpoena served on Haag in connection with an insurance dispute currently pending before the United States District Court for the District of South Dakota," in which "Lead GHR has asserted several first-party claims against Defendant American States Insurance Company ('American States') based on American States' alleged failure to pay full policy benefits under a property insurance policy" and "Lead GHR contends American States did not pay for all damage caused by a defective retaining wall located near a hotel it owns." Dkt. No. 1 at 1-2 (footnote omitted). Haag further explains that it

is a forensic engineering and consulting firm which provides failure, extent of damage, and repair analysis to a wide variety of clients. While Haag consults on projects located throughout the country, its principal office is in Irving, Texas.

On or about October 10, 2010, a retaining wall located near Lead GHR's Golden Hills Resort (the "Hotel") collapsed. As alleged by Lead GHR, the collapse "damaged the [retaining w]all, the adjacent parking lot, and other portions of the Hotel's exterior." Lead GHR purchased a casualty insurance policy issued by American States that was alleged to cover the Hotel at all times relevant to the Underlying Cause (the "Policy"). In assessing Lead GHR's claim under the Policy, American States retained Haag to determine the cause of the failure. On or about October 29, 2010, Haag engineers Dave Teasdale and Tim Strasser inspected the retaining wall and prepared a forensic engineering report. After reviewing Haag's final report, American States allegedly "refused to pay for any damage or loss caused by the [retaining wall's] collapse, including damage to the Hotel exterior."

> On April 26, 2016, Lead GHR instituted the [South Dakota Lawsuit] in which it asserted several first-party claims related to American States' failure to pay full policy benefits, including: (1) breach of the Policy; (2) bad faith insurance practices; and (3) conversion of Policy premiums.

*Id.* at 2-3 (footnotes omitted).

Haag explains that, while it "is not a party to the [South Dakota Lawsuit], American States has designated David Teasdale – a Haag engineer – as a testifying expert" and that "American States has offered Lead GHR the opportunity to depose Mr. Teasdale, as is required by Rule 26 of the Federal Rules of Civil Procedure." *Id.* at 2 (footnote omitted). More specifically, according to Haag, "[o]n May 5, 2017, American States designated Mr. Teasdale as a testifying expert and offered Lead GHR the opportunity to depose him, as is required by Rule 26 of the Federal Rules of Civil Procedure," but "Lead GHR did not exercise its right to depose Mr. Teasdale under Rule 26(b)(4)(A)." *Id.* at 3 (footnotes omitted).

Instead, Haag explains, "Lead GHR served Haag with a Rule 30(b)(6) Subpoena and requested that Haag appoint a corporate representative qualified to testify as to the subject matter of Mr. Teasdale's report and expected testimony." *Id.* (footnote omitted). That is, according to Haag, "in a clear attempt to circumvent its obligation to compensate Haag 'a reasonable fee for time spent in responding to discovery' under [Federal Rule of Civil Procedure] 26(b)(4)(E), Lead GHR served Haag with a Rule 30(b)(6) subpoena (the 'Subpoena') for a deposition on topics addressed in Mr. Teasdale's report," and "Lead GHR's evident efforts to circumvent the proper application of the discovery rules alone merit an order quashing its Subpoena." *Id.* at

2 (footnote omitted).

Haag further contends that the "[t]he Subpoena also sought to elicit testimony regarding Haag's: (1) relationship with insurance carriers generally and (2) internal policies and personnel files – neither of which have any bearing on the" South Dakota Lawsuit – and thereby "seeks to elicit testimony on multiple topics that are unduly burdensome because they call for testimony that is irrelevant to the claims and/or defenses raised in the Underlying Cause. That is, the Subpoena seeks testimony about Haag's work on assignments unrelated to the retaining wall at issue and irrelevant information regarding Haag's relationships with other insurance carriers." *Id.* at 2, 3-4 (footnote omitted).

Haag argues that, for these reasons, "the Subpoena should be quashed." *Id.* at 2.

Lead GHR responds that Haag

has moved to quash the 30(b)(6) subpoena from [Lead GHR] to Haag. Haag's basis for their objection is twofold: (1) Lead GHR is attempting to circumvent the discovery process under Federal Rule of Civil Procedure Rule 26 by serving a 30(b)(6) subpoena on Haag instead of deposing the designated expert, David Teasdale; and (2) the subject matter of some of the testimony that has been requested is irrelevant to the underlying claim. Because Haag's positions are without merit, the subpoena should be enforced, and Haag should be compelled to comply with the deposition notice.

Dkt. No. 5 at 1. Lead GHR asserts that it "wholly complied with both [Federal Rules of Civil Procedure 30(b)(6) and 45] when it issued its subpoena upon Haag"; that it does not intend to circumvent Rule 26(b)(4)(A); and that Haag cannot meet its burden of demonstrating that the Subpoena is unduly burdensome. *Id.* at 2-10.

Haag replies that,

> [b]y its response, [Lead GHR] argues that it is entitled to enforce a burdensome and intrusive subpoena that it issued against nonparty [Haag]. However, Lead GHR's proposed application of the Federal Rules of Civil Procedure is not only unreasonable but also ignores Rule 45's clear intent to avoid imposing undue burdens on nonparties.
>
> To support its unique application of the Rules, Lead GHR's response digresses from the realities of the claims and issues that are relevant to its ongoing dispute with American States Insurance Company (the "South Dakota Lawsuit"). In the South Dakota Lawsuit, Lead GHR asserted several first-party claims against American States based on its alleged failure to pay full policy benefits on a property-damage claim related to the failure of retaining wall owned by a hotel located in Lead, South Dakota. Haag is not a party to the South Dakota Lawsuit. Indeed, save for a conclusory one-sentence statement that former Haag engineer Tim Strasser was a "preferred vendor" of American States, Haag is not even mentioned in Lead GHR's complaint. This singular and conclusory reference, however, fails to provide any justification for Lead GHR's burdensome subpoena that seeks the discovery of irrelevant information from Haag. Accordingly, Lead GHR's demands are not supported by established law governing nonparty discovery or the facts which underlie its claims pending in the South Dakota lawsuit.

Dkt. No. 6 at 1-2 (footnotes omitted).

## Legal Standards

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to attend and testify." FED. R. CIV. P. 45(a)(1)(A)(iii). Under Rule 45(c), "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A).

Federal Rule of Civil Procedure 30(b)(6) provides that,

> [i]n its notice or subpoena, a party may name as the deponent a public or

private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules."

FED. R. CIV. P. 30(b)(6).

The United States Court of Appeals for the Fifth Circuit has explained in this context of a Rule 30(b)(6) deposition of a corporate representative:

Rule 30(b)(6) is designed "to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." Therefore, the deponent "'must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters.'" "[T]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

"Obviously it is not literally possible to take the deposition of a corporation; instead, ... the information sought must be obtained from natural persons who can speak for the corporation." Thus, a rule 30(b)(6) designee does not give his personal opinions, but presents the corporation's "position" on the topic. When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.

We agree with BRA that Cajun violated rule 30(b)(6) by failing to prepare Grigsby with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization, such as whether BRA had presented a warranty claim to Cajun. At the very least, Cajun could have designated another witness with personal or corporate knowledge of the questions asked.

If the designated "agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Resolution Trust* [*Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 187 (5th Cir. 1993).] In *Resolution Trust* we affirmed sanctions against a party that possessed documents that plainly identified a witness as having personal knowledge of the subject of the deposition but did not furnish those documents or designate the witness until after it had designated two other witnesses with no personal knowledge.

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-34 (5th Cir. 2006) (footnotes and citations omitted).

"For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute. Otherwise, an overly broad Rule 30(b)(6) notice may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Hartford Fire Ins. Co. V. P & H Cattle Co.*, No. 05-cv-2001, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009).

Under Federal Rule of Civil Procedure 45(d)(3)(A), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other

protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A).

The moving party has the burden of proof. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998). "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

On a motion asserting undue burden, "[t]he moving party has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Wiwa*, 392 F.3d at 818 (quoting *Williams*, 178 F.R.D. at 109 (internal quotation marks omitted)). "The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015).

"Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d at 818 (internal quotation marks and footnote omitted). "To determine whether the subpoena presents an undue burden, [the Court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* (footnote omitted). "Further, if the person to whom the document request is made is a non-party, the court

may also consider the expense and inconvenience to the non-party." *Id.* (footnote omitted).

"When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *Williams*, 178 F.R.D. at 110. Rule 26(b)(1) has been amended, effective December 1, 2015, to provide that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The Court also "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (footnote omitted). "Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date; [t]he requests are not particularized; and [t]he period covered by the requests is unlimited." *Am. Fed'n of Musicians of the U.S. & Canada v. SKODAM Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015) (internal quotation marks omitted).

Federal Rule of Civil Procedure 26(b)(4) addresses discovery from expert witnesses:

(A)  Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

(B)  Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

(C)  Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

  (i)    relate to compensation for the expert's study or testimony;

  (ii)   identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

  (iii) i dentify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D)  Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

  (i)    as provided in Rule 35(b); or

  (ii)   on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E)  Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

  (i)    pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

  (ii)   for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

Fed. R. Civ. P. 26(b)(4).

## Discussion

Haag argues that the Subpoena should be quashed (1) because Lead GHR seeks a deposition under Rule 30(b)(6) to circumvent the customary application of discovery rules and (2) because the Subpoena is unduly burdensome because it calls for testimony that is irrelevant to any claim or defense raised in the South Dakota Lawsuit.

### I.

As to the first issue, Haag contends that "Lead GHR seeks to improperly depose a testifying expert under a Rule 30(b)(6) subpoena – rather than utilizing Rule 26(b)(4)(A) – to avoid reimbursing Haag for certain fees associated with deposing an expert." Dkt. No. 1 at 5. Haag notes that "Lead GHR's topics for examination one, two, and three relate exclusively to matters included in Mr. Teasdale's report and that would be addressed in his deposition under Rule 26, including: Information communicated to Haag about Lead GHR, the retaining wall, and/or the Hotel; Any measurements, notes, memoranda, reports, drafts, emails, correspondence, calculations, photographs, videos, or graphs prepared or created by Haag employees in conjunction with the inspection....; Any conclusions drawn by Haag employees regarding the failure of the retaining wall; and Information regarding Mr. Teasdale's qualifications." *Id.* at 5-6 (footnotes omitted).

According to Haag, "[e]ven though these topics clearly encompass matters that

should be raised in a Rule 26 deposition of the designated expert, Lead GHR issued a Subpoena under Rule 30(b)(6)," and, "[u]nder such circumstances, the Subpoena not only imposes an undue expense and burden on Haag in violation of Rule 45(d)(1), but it clearly reflects an effort to avoid coordinating with South Dakota opposing counsel and paying for Mr. Teasdale's expert deposition testimony." *Id.* at 6.

And Haag asserts that "Lead GHR also seeks to elicit testimony on several matters related to Haag's relationship with American States and Liberty Insurance Company ('Liberty'), including: Haag's relationship with American States and/or Liberty, generally; The number of claims on which American States and/or Liberty has retained Haag in South Dakota since 2009; The percentage of claims in which Haag has tendered a report on behalf of American States and/or Liberty in South Dakota since 2009; Any solicitations or discounts offered by Haag to American States and/or Liberty from 2008 to 2012; Any instances in which American States and/or Liberty placed a moratorium on Haag's performing engineering services on behalf of American States since 2008; and Any instance in which American States and/or Liberty has accused Haag of committing fraud, negligence, or professional, malpractice." *Id.* at 6-7 (footnotes omitted).

According to Haag, "[t]hese topics seek testimony that is a natural extension of what Lead GHR would develop in a proper Rule 26 deposition of Haag engineer David Teasdale," and "[r]equiring Haag to designate and produce a corporate representative for a deposition on these topics would impose an undue burden and expense on Haag in violation of Rule 45(d)(1)," where, "[i]nstead, Haag suggests these areas of inquiry

-15-

be directed to Mr. Teasdale during his Rule 26 deposition" and "Mr. Teasdale is prepared to respond to those questions." *Id.* at 7.

Lead GHR responds that "[t]he supposition by Haag that Lead GHR does not intend to depose David Teasdale is wrong"; that "Lead GHR fully intends to take Mr. Teasdale's deposition, as well as Haag's"; that, "[i]In fact, for months, Mr. Teasdale's deposition has been tentatively set for the week of December 13 to 15" but has been postponed pending the Court's ruling on this Motion [to Quash], in order to attempt to take both depositions in one trip, rather than two"; and that "Lead GHR has no intention of circumventing its Rule 26(b)(4)(A) duties." Dkt. No. 5 at 2.

And Lead GHR asserts,

> although Mr. Teasdale may be able to testify to matters which might overlap with the testimony of Haag, such testimony would not be binding on Haag. Lead GHR has alleged that Haag is a "preferred vender" of Defendant American States Insurance Company. *See* Document 1-1, Ex. A Complaint, Paragraph 10. It is Lead GHR's burden to meet its burden of proof on this allegation. It is appropriate to seek such information from the fact witness, Haag. Without the testimony of Haag, Mr. Teasdale's affirmation in his deposition can be easily sidestepped by his company through an affidavit. A Rule 30(b)(6) deposition prevents such sidestepping.
>
> Even accepting Haag's argument that Mr. Teasdale is better suited to provide testimony on the topics identified in the subpoena, courts have permitted 30(b)(6) depositions even though the information sought could and should be obtained by other, more-efficient means. *See, e.g., New Jersey v. Sprint Corp.*, No. 03-2071-JWL, 2010 WL 610671, at *2-3 (D. Kan. Feb. 19, 2010). The *Sprint* court also rejected the argument that the 30(b)(6) deposition would duplicate discovery already obtained by other means. *Id.* It explained that the rule is designed to bind the corporation or agency, exactly as Lead GHR is intending here. *Id.* "[J]ust because the topics proposed are similar to those contained in documents provided or interrogatory questions answered" does not prohibit the taking of a 30(b)(6) deposition. *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). Such is the case here.

Lead GHR is not disputing that the Defendant American States has properly designated David Teasdale as a testifying expert under Rule 26 of the Federal Rules of Civil Procedure. Nor does it dispute he is the proper person for it to depose as an expert. As set out above, Lead GHR has every intention of deposing Mr. Teasdale as an expert in the coming weeks. Lead GHR also has every intention of compensating him for his time under Rule 26(b)(4)(E). The 30(b)(6) subpoena in question is in no way an effort to "circumvent the proper application of the discovery rules..." Motion ¶1. Instead, it is to obtain discovery from a relevant fact witness. The necessity for the deposition of Haag under 30(b)(6) is clear: to gather all information available to Haag through its employees Mr. Teasdale and Mr. Strasser, including information about the longstanding relationship between Haag and American States Insurance Company. The latter is a subject about which Mr. Teasdale would not be able to testify. Sprint recognizes that a party may have an interest in getting the corporation's testimony on an issue, rather than just that of an individual. *Sprint*, 2010 WL 610671, at *2. Here, that interest is clearly necessary given Lead GHR's allegation that Haag is a "preferred vender" of Defendant American States Insurance Company.

In cases much like the present case, "courts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition." *Id.* In other words, the possibility that the subject matter of Haag's testimony and Mr. Teasdale's testimony may overlap is not a reason to quash Lead GHR's subpoena. The subject matter of the Haag report will obviously be a portion of the subject matter of Mr. Teasdale's expert deposition. However, what Haag may know about its report is not necessarily the same as what Mr. Teasdale may know about it – particularly, when he was not the only Haag employee assigned to Lead GHR's claim. Both Haag and Mr. Teasdale are fact witnesses in their own right. Fact witness testimony often covers the same or similar subject matter. However, that is not a reason to exclude such testimony. Haag's argument that the expert testimony of Mr. Teasdale is sufficient for Lead GHR's litigation purposes is without merit. For these reasons, Lead GHR asks this Court to enforce the subpoena as modified herein, and allow the 30(b)(6) deposition of Haag to occur.

*Id.* at 3-7 (emphasis omitted).

Haag replies that

Lead GHR contends that the Federal Rules of Civil Procedure not only

permit but anticipate its issuing Haag a purported Rule 30(b)(6) subpoena to indirectly elicit testimony from testifying expert David Teasdale. Lead GHR even goes so far as to admit that it seeks the same testimony from Haag as it would seek from Mr. Teasdale under Rule 26. Despite Lead GHR's claims to the contrary, such an application of the Rules is contrary to established jurisprudence.

....

Haag fully supports Lead GHR's apparent position that it "could and should" seek Mr. Teasdale's testimony under Rule 26. However, Lead GHR seeks to compel Haag to designate a corporate representative for the same testimony that Mr. Teasdale would provide as a testifying expert in the South Dakota Lawsuit. It is nonsensical to force Haag to designate Mr. Teasdale as its corporate representative only so he may provide the same testimony that he would provide under Rule 26(b)(4)(A).

In *Perry v. United States*, the Honorable Jane Boyle, then serving as a United State Magistrate Judge for the Northern District of Texas, rejected similar efforts made by a party to use a nonparty subpoena to indirectly engage in expert discovery. *See Perry v. United States*, No. 3:96-CV-2038-T, 1997 WL 53136, at *1 (N.D. Tex. Feb. 4, 1997). There, a party issued a subpoena under Rule 45 in an effort to elicit testimony from a nonparty expert. *Id.* at *1-2. Judge Boyle refused to permit such an obvious effort to circumvent the customary application of the discovery rules: "[R]ule 26(b)(4) governs a party's access to the opposing party's experts. A party may not circumvent the limitations of Rule 26 and gain access to opposing expert evidence via a bare subpoena duces tecum." *Id.* at *1 (internal citation omitted).

Courts throughout the country have adopted a similar position by finding that a party may not use a nonparty subpoena to bypass expert discovery parameters of Rule 26. *See In re Fuller*, No. 2:13-MC-140-JHR, 2013 WL 5305317, at *2 (D. Me. Sept. 18, 2013) (collecting cases in which courts found that a party may not use a nonparty subpoena to bypass the proper application of Rule 26); *see also Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, No. 16-00136-CV-W-HFS, 2017 WL 2313288, at *2 (W.D. Mo. May 18, 2017) (refusing to permit a party to use a nonparty subpoena to discover Rule 26 information because "Rules 26 and 30 operate as a control, or brake if you will, on the potential runaway use of the subpoena duces tecum to compel the production of the evidence of experts retained by a party to testify at trial."); *Marsh v. Jackson*, 141 F.R.D. 431, 432 (W.D. Va. 1992) (same).

Here, despite Lead GHR's arguments to the contrary, the Subpoena seeks to elicit expert testimony from Haag under the guise of a Rule 30(b)(6) deposition. As discussed in Haag's Motion to Quash

Deposition Subpoena and Supporting Brief ("Motion"), topics for examination one, two, three, five, six, and seven are examples of what an expert may be compelled to provide testimony on under Rule 26(b)(4)A. Notably, Lead GHR seeks testimony from a Haag corporate representative regarding "[a]ny measurements, notes, memoranda, reports, drafts, emails, correspondence, calculations, photographs, videos, or graphs prepared or created by Haag employees in conjunction with the inspection...." These are precisely the topics Teasdale will testify about as a designated testifying expert. Lead GHR also seeks to elicit testimony on numerous topics related to the preparation of Mr. Teasdale's previously tendered report, including: (1) Mr. Teasdale's qualifications; (2) external information Mr. Teasdale may have received or relied on in preparing his report; and (3) any conclusions drawn by Mr. Teasdale or Mr. Strasser regarding the failure of the retaining wall. To seek this information from Haag (Mr. Teasdale's employer) is facially burdensome, is an end run around Rule 26(b)(4)A, and is an attempt to avoid paying Mr. Teasdale compensation under Rule 26(b)(4)(E).

Further, the Subpoena seeks to elicit testimony on no fewer than twelve separate topics (inclusive of sub-topics) that are designed to investigate any biases Mr. Teasdale may hold. These topics address Haag's relationship (not Teasdale's personally) with numerous insurance carriers, including Defendant American States and Liberty Insurance Company ("Liberty"):

- Haag's relationship with American States and/or Liberty, generally;
- The number of claims on which American States and/or Liberty has retained Haag in South Dakota since 2009;
- The percentage of claims in which Haag has tendered a report on behalf of American States and/or Liberty in South Dakota since 2009;
- Any solicitations or discounts offered by Haag to American States and/or Liberty from 2008 to 2012;
- Any instances in which American States and/or Liberty placed a moratorium on Haag's performing engineering services on behalf of American States since 2008;
- Any instance in which American States and/or Liberty has accused Haag of committing fraud, negligence, or professional, malpractice.
- "[Haag's] professional relationship with [any] insurance carriers";
- "Any instances, from 2005 to 2010, in which a moratorium was placed on Haag from performing engineering services on behalf of any insurance company, and the circumstance

surrounding such moratorium"; and

- "Any instances from 2005 to 2010, in which any insurance company which has retained Haag's professional services has alleged that Haag or its employees have committed fraud, negligence, or professional malpractice."

Each of the topics described above represent common (albeit impermissibly broad) examples of matters that should be raised in a Rule 26 deposition of Mr. Teasdale. Lead GHR may not, however, seek to elicit testimony on these topics under the guise of a Rule 30(b)(6) deposition. *See Perry*, No. 3:96-CV-2038-T, 1997 WL 53136, at *1; *see also Westchester Surplus Lines Ins. Co.*, No. 16-00136-CV-W-HFS, 2017 WL 2313288, at *2. As explained in its Motion to Quash, Mr. Teasdale, as the designated expert, will testify regarding his personal knowledge of these topics. Mr. Teasdale will also speak to his assignments with American States. It is Mr. Teasdale's testimony as the designated expert that is relevant to the South Dakota Lawsuit, not Haag's as Mr. Teasdale's employer.

*Id.* at 2-6.

Haag also notes that "Lead GHR also seemingly concedes that it hopes to use Haag's testimony to attack the credibility of Mr. Teasdale's expert opinions" and that, "[b]ased on its own stated intentions, Lead GHR's purported Rule 30(b)(6) subpoena should be quashed, and Lead GHR should direct its question to Mr. Teasdale via Rule 26." *Id.* at 3 n.8. And Haag explains that "Mr. Strasser is no longer employed by Haag nor is he subject to Haag's control. Accordingly, Haag is not a proper party to provide any testimony regarding Mr. Strasser's mental impressions or findings." *Id.* at 4 n.13.

Rule 26(b)(4) does govern discovery from a testifying expert witness, but Lead GHR has shown that it seeks Haag's Rule 30(b)(6) deposition testimony not merely as Mr. Teasdale's employer. Haag was involved in the relevant factual background of Lead GHR's claims before suit was filed and Mr. Teasdale was later designated as a testifying expert witness. This is not the same situation as in, for example, *Perry* –

here, Haag is the testifying expert witness's employer but was also involved in the underlying events giving rise to the South Dakota Lawsuit through its relationship with the defendant American States and the involvement of another employee.

Lead GHR first asserts that Haag's Rule 30(b)(6) testimony is needed to support its allegation in its complaint in the South Dakota Lawsuit that, "[a]fter completing its inspection through preferred venders Chris Shopshear of Eagle Adjusting and Tim Strasser of Haag Engineering, Defendant failed to pay any portion of the purported loss." Dkt. No. 1-1 at 3. Lead GHR appears to assert that it needs Haag's binding affirmation that Haag was one of American States Insurance Company's preferred vendors and to explore what that means and that Mr. Teasdale's Rule 26(b)(4)(A) deposition testimony cannot provide that. Under these circumstances, Lead GHR is not improperly circumventing Rule 26(b)(4) by invoking Rule 30(b)(6) through a Rule 45 subpoena to obtain Haag's testimony as to Topics 5, 6, and 7 in the Subpoena. Put another way, Lead GHR would have a basis to seek this testimony from Haag even if American States had not designated Mr. Teasdale or another Haag employee as an expert witness. That American States did so does not limit any discovery as to Haag's relationship with American States (or Liberty, of which it is an affiliate) that is relevant to Lead GHR's claims as pleaded because Mr. Teasdale, as the designated testifying expert witness, will testify regarding his personal knowledge of the matters made relevant by his expert testimony under Federal Rules of Civil Procedure 26(a)(2) and 26(b)(4) and will be compensated for doing so under Rule 26(b)(4)(E).

As to those matters, however, which are covered by Topics 1, 2, and 3(a), the

Court agrees with the analysis of other courts that obtaining the binding Rule 30(b)(6) testimony of an expert witness's non-party employer is not relevant and proportional to the needs of the case under Rule 26(b)(1) or appropriate where Mr. Teasdale, as the testifying expert, has personal knowledge of those matters that are the basis for his reports and has access to Haag's files and is prepared to testify to those matters as addressed in the report. *See* Dkt. No. 1-1 at 19-20; *Sunwood Condominium Ass'n v. Travelers Cas. Ins. Co. of Am.*, Case No. C16-1012-JCC, 2017 WL 1652965, at *2 (W.D. Wash. May 2, 2017); *cf. Marsh v. Jackson*, 141 F.R.D. 431 (W.D. Va. 1992). Unlike the matters on which Haag's knowledge and testimony are independently relevant, binding, corporate representative testimony from Haag – a non-party – on these topics has no independent relevance to Lead GHR's claims and could only be useful to Lead GHR to evaluate the bases Mr. Teasdale's expert witness testimony. But that is what the Rule 26(b)(4)(A) deposition will be for, and Haag has shown that requiring Rule 30(b)(6) testimony by subpoena is therefore unreasonable and unduly burdensome

## II.

As to Haag's second argument, it argues that "[t]he Court should also quash the Subpoena [as to Topics 5, 6, and 7] because it seeks a deposition on several topics that are wholly unrelated to any claim or defense raised in the [South Dakota Lawsuit]" and "Rule 45 may not be used as a mechanism to obtain discovery of matters that are irrelevant to the underlying dispute; such an application of the Rules would serve to impose an undue burden on nonparty deponents." Dkt. No. 1 at 7. Haag explains that

South Dakota substantive law governs Lead GHR's claims in the [South

Dakota Lawsuit]. First-party insurance claims under South Dakota law challenge an insurer's decision to deny coverage and "must be reviewed at the time [the insurer] made the decision." *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 629-30 (S.D. 2009) (citing *Walz v. Fireman's Fund. Ins. Co.*, 556 N.W.2d 68, 70 (S.D. 1996)) (internal quotation omitted). The relevant inquiry for these claims is narrowly focused on "the facts and law available to [the i]nsurer at the time it made the decision to deny coverage." Id. at 629.

The [South Dakota Lawsuit] is a straightforward matter that seeks only to evaluate American States' decision to deny coverage under the Policy. Nonetheless, Lead GHR seeks to elicit testimony on an exceedingly broad swath of information which is wholly irrelevant to any claim or defense raised by the parties. In particular, Lead GHR seeks testimony regarding Haag's: (1) relationship with insurance carriers at large ..., which [does not] have any bearing on the [South Dakota Lawsuit].

*Id.* at 8 (footnotes omitted).

According to Haag,

Lead GHR has no cognizable argument that Haag¡|s relationship with any number of nonparty and unnamed insurance carriers is relevant to the [South Dakota Lawsuit]. Nonetheless, Lead GHR seeks to elicit testimony on a number of topics which address Haag's "professional relationship" with insurance carriers, generally. Such deposition topics include:
- [Haag's] professional relationship32 with [any] insurance carriers";
- "Any instances, from 2005 to 2010, in which a moratorium was placed on Haag from performing engineering services on behalf of any insurance company, and the circumstance surrounding such moratorium"; and
- "Any instances from 2005 to 2010, in which any insurance company which has retained Haag's professional services has alleged that Haag or its employees have committed fraud, negligence, or professional malpractice."

None of these topics have any bearing on the claims or defenses raised in the [South Dakota Lawsuit]. Indeed, any nonparty discovery from Haag should be narrowly tailored to include only that information that was considered by American States at the time it decided to deny Lead GHR's claim. *See Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 629¡V30. Further, such topics are not implicated by any defense raised by American States. Therefore, deposition topics seven, 7(a), and 7(b) seek

to impose an undue burden on Haag and should be dismissed.

Moreover, Lead GHR's topics are overly broad in that they seek information that spans an unreasonable time period, i.e., from five to twelve years prior to Lead GHR's loss and even (in some instances) seven years after Lead GHR's loss.

Based on the foregoing, deposition topics five and six seek to impose an undue burden on Haag and should be dismissed or amended.

*Id.* at 8-10 (footnotes omitted). And, according to Haag, "[t]he term 'professional relationship' included in deposition topic seven is exceedingly broad and subject to countless interpretations," and "attempting to comply with the multiple potential interpretations of 'professional relationship' would subject [Haag] to undue burden and expense in violation of Rule 45(d)(1)." *Id.* at 9 n.32.

Lead GHR responds that, "in looking at South Dakota law, a Plaintiff in a Bad Faith action must demonstrate an absence of a reasonable basis for denial by examining 'the facts and law available to [the i]nsurer at the time it made the decision to deny coverage,'" and "[o]ne such fact that bears considerably on this case is the reasonableness of Defendant American State's Insurance Company's decision to rely on Haag to investigate this claim." Dkt. No. 5 at 8 (quoting *Dakota, Minn. & E. R.R. Corp.*, 771 N.W.2d at 629). Lead GHR asserts that "Haag's reputation in the insurance industry and the reasonableness of the insurer's decision to retain Haag to investigate Lead GHR's claim are important issues for the jury to consider, and precisely the type of 'countervailing evidence' against which the Haag report should be measured." *Id.*

According to GHR,

[a]t a minimum, each of these topics is reasonably calculated to lead to admissible evidence regarding Haag's status as a preferred vender, and Haag's reputation in the insurance industry. The insurance expert for

American States Insurance Company has testified that it is generally incumbent on the insurance carrier to "scope" the venders it retains to investigate its claims. *See* Oviatt Dec., Ex. 2, Deposition of Peter Hildebrandt (excerpt), 45:15 to 45:18. Thus, Haag's reputation in the insurance community is of critical importance to Lead GHR's allegation that Haag is a preferred vender of Defendant American States Insurance Company, and bears on the reasonableness of the insurer to retain Haag to investigate this claim.

      For example, Haag's relationship with State Farm was the subject of a qui tam action in the Southern District of Mississippi, where Haag was accused of fraud and conspiracy against the Federal Government. *See U.S. ex rel. Rigsby v. State Farm Ins. Co., et al.*, 2009 WL 2461733 (S.D. Miss. 2009). Sometime after these allegations, reports surfaced that Haag's work with State Farm Insurance Company would be reviewed, and potentially halted. *See* Oviatt Dec., Ex. 3. Given this, Lead GHR should be permitted to inquire into this history, and any corrective actions taken by Haag since these allegations. This is appropriate in order to determine the reasonableness of American States Insurance Company's retentions of Haag for Lead GHR's claim. It is for these reasons that the Subpoena identified these topics of inquiry, and they should be enforced.

*Id.*

Haag replies that

Lead GHR claims that these topics are relevant because it bears the burden to prove that Haag is a "preferred vendor." However, this self-imposed burden bears no relationship to Lead GHR's actual burden to demonstrate "the facts and law available to [American States] at the time it made the decision to deny coverage." *Acuity*, 771 N.W.2d at 629-30. To the extent that Lead GHR does have questions regarding Haag's relationship with American States or Liberty, it should direct them to American States (as a party) and should not be permitted to engage in invasive discovery based on this self-imposed obligation.

      Even assuming Lead GHR did bear a burden to demonstrate that Haag was a "preferred vendor" of American States, the deposition topics included in the Subpoena are not limited to information related to Haag's alleged status as a "preferred vendor." In fact, the phrase "preferred vendor" does not appear in the Subpoena. Even accepting Lead GHR's misplaced arguments as fact, the Subpoena remain facially over broad because it encompasses a wide swath of information that is wholly irrelevant to this determination. Moreover, since it is American States

that allegedly determined Haag is a "preferred vendor", Lead GHR should instead inquire with American States why it did so.

Dkt. No. 6 at 8-9.

And Haag notes that "Lead GHR also wholly fails to address Haag's position that topics for examination five, six, and seven are overbroad" based on their time frame. *Id.* at 9. That is so, and the Court will modify Topics 5, 6, and 7 to an end date of the date on which American States made the decision to deny coverage for each subtopic, where any relationship or reputational concerns thereafter are not relevant to Lead GHR's claims. But the Court does not find that the start dates even as early as 2005 in Topic 7 are facially overbroad.

The Court is otherwise unpersuaded that, in light of Lead GHR's explanations of the relevance of the information sought by Topics 5, 6, and 7, those topics are facially overbroad and should be quashed as unduly burdensome or because Lead GHR can also ask American States about Haag's "preferred vendor status." And, as for Haag's concern about the scope and meaning of "professional relationship," Haag can and should confer with American States's counsel to ascertain the meaning of that term. *See Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 289 (N.D. Tex. 2017) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 491-92 (N.D. Tex. 2014)).

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS IN PART and DENIES IN PART Non-Party Haag Engineering Co.'s Motion to Quash Deposition Subpoena [Dkt. No. 1]; QUASHES the Subpoena served on Non-Party Haag

Engineering Co. by Plaintiff Lead GHR Enterprises, Inc. only as to Topics 1, 2, and 3(a) (where Topics 3(b) and 4 have been withdrawn); and MODIFIES the Subpoena as explained above as to Topics 5, 6, and 7.

SO ORDERED.

DATED: December 14, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE